## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

In re:

| | |
|---|---|
| ARROW ALUMINUM INDUSTRIES, INC., | Case No. 13-21470-JDL<br>Chapter 11 |
| EDNA ELAINE BLACKWELL, | Case No. 13-21493-JDL<br>Chapter 11 |
| RICKA BLACKWELL, | Case No. 13-21495-JDL<br>Chapter 11 |
|      Debtors. | |

---

### FIRST AMENDED JOINT DISCLOSURE STATEMENT TO PLAN OF REORGANIZATION

---

ATTORNEYS FOR DEBTORS:

HARRIS SHELTON HANOVER WALSH, PLLC
Steven N. Douglass (009770)
Chandra Madison (30536)
40 South Main Street, Suite 2700
Memphis, Tennessee 38103
(901) 525-1455
(901) 526-4084 - Fax

# TABLE OF CONTENTS

Page

SUMMARY OF NATURE OF THE PLAN ............................................................................... iv

Article

I.      INTRODUCTION ...............................................................................................1

II.     EVENTS LEADING UP TO THE CHAPTER 11 FILING ..............................5
      A.      Energy Star.........................................................................................5
      B.      Economic Downturn and Receivership Proceeding .................................6
      C.      State Court Lawsuit............................................................................7

III.    SUMMARY OF SIGNIFICANT EVENTS DURING THE BANKRUPTCY ..................7
      A.      Bankruptcy Proceedings ......................................................................7
           1.      FCNB's Motion to Transfer Venue ........................................8
           2.      FCNB's Motion to for Relief…………………………………………8
           3.      IRS Motion for Relief ...........................................................8
      B.      Current Financial Condition ..............................................................8
      C.      Assets and Secured Liabilities .............................................................9

IV.    THE PLAN OF REORGANIZATION ...........................................................9
      A.      General Background ...........................................................................9
      B.      Unclassified Claims ........................................................................10
           1.      Administrative Expenses .....................................................10
      C.      Classification of Claims and Interests ...............................................11
      D.      Treatment of Classified Claims and Interests ......................................11
           1.      Class 1 – FCNB Secured Claim............................................11
           2.      Class 2 – IRS and State of Tennessee Claim ...........................11
           3.      Class 3 – IRS Secured Claim ...............................................12
           4.      Class 4 – FCNB Unsecured Claim.........................................12
           5.      Class 5 – General Unsecured Claims......................................12
           6.      Class 6 – Interests ..............................................................12

V.      MEANS FOR EXECUTION OF THE PLAN......................................................12
      A.      Funding for the Plan; Structure of Reorganized Debtor .......................12
      B.      Post-confirmation Management; Disbursing Agent ...............................12
      C.      Risk Factors ..................................................................................13
      D.      Executory Contracts and Unexpired Leases .......................................13
      E.      Additional Plan Provisions................................................................14
           1.      Retention of Jurisdiction .....................................................14
           2.      Retention and Assignment of Claims .....................................15
      F.      Injunctions ....................................................................................15
      G.      Changes in Rates Subject to Regulatory Commission Appeal ................16
      H.      Tax Consequences of Plan ................................................................16

VI.    VOTING PROCEDURE ...........................................................................16

A.    Voting Procedure and Ballots ...................................................................16
B.    Voting Deadline ......................................................................................17
C.    Withdrawal of Ballots or Changing Votes ............................................17

VII.    ACCEPTANCE AND CONFIRMATION ......................................................17

VIII.    LIQUIDATION ANALYSIS .........................................................................19

IX.    FEASIBILITY .................................................................................................20

X.    EFFECT OF PLAN CONFIRMATION ..........................................................21
A.    Discharge ................................................................................................21
B.    Modification of the Plan ........................................................................21
C.    Quarterly Fees ........................................................................................22

XI.    RECOMMENDATIONS AND CONCLUSION .............................................22

## EXHIBITS

A.    Debtor's Plan of Reorganization
B.    Debtor's Monthly Operating Reports
C.    Projected Cash Flow and Budget Through 2013
D.    Ballot

## Summary of Nature of the Plan Pursuant to
## Bankruptcy Rule 3016

The Plan of Reorganization (the "Plan") is filed by the debtor and debtor in possession, Arrow Aluminum Industries, Inc. (the "Debtor"). The Plan provides for the Arrow's primary creditor, First Citizens National Bank, receiving a secured claim for the equipment and the insider principals obtaining reverse mortgages on their homes and properties to pay Citizens Bank. Debtors Ricka Blackwell and Edna Elaine Blackwell join this Disclosure Statement but the cases are not substantively consolidated. The Individual Debtors intend to seek dismissal of their cases in order to effectuate the reverse mortgage. They have no other assets for distribution to creditors. This Disclosure Statement provides information as required under 11 U.S.C. § 1125 related to the Plan, including, but not limited to, details on voting, confirmation, distributions and claim determinations within the Plan.

The Claims against the Debtor consist of:

- Administrative Expense Claims.

- The secured claim of the First Citizens National Bank in the amount of $2,000,000.

- IRS and State of Tennessee unsecured priority claims.

- IRS[1] Secured Claim – the secured Claim of the IRS to be treated as unsecured priority pursuant to 11 U.S.C. § 506.

- FCNB Undersecured.

- General Unsecured Claims – all unsecured claims FCNBand including potential Claims from the Rejected Contracts. It is divided into Class 3A and 3B.

- Ownership Claims – the allowed Claims and Interests of the owners of the Debtor.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

iv

The following table summarizes the classes of Claims and Interests and the treatment of each Class under the Plan.

| Class | Class Composition | No. of Claimants (Approx.) | Amount of Claims (Approx.) | Amount and Timing of Distributions | Impaired or Unimpaired |
|-------|-------------------|----------------------------|----------------------------|-------------------------------------|-------------------------|
| Unclassified | Administrative Claims | Unknown | Unknown | Allowed Claims to be paid in full, as soon as practicable after the Effective Date | Not applicable |
| 1 | FIRST CITIZENS NATIONAL BANK | 1 | $200,00 | Class 1 will be paid in one hundred eighty (180) equal monthly installments from the Effective Date. | |
| 2 | IRS and State of Tennessee | 2 | $315,498 | Monthly payments of interest and principal beginning on the tenth day of the month after the Effective Date with the balance to be paid in full 60 months from the Effective Date. | Impaired |
| 3 | IRS | 1 | $285,378 | The secured claim of the IRS will be treated as fully undersecured in Class 2 and 5. The IRS lien shall be dissolved. | Impaired |
| 4 | Unsecured Claim of FCNB | 1 | UNKNOWN | Allowed Claim will determined after receipt of funds from the reverse mortgages obtained by the Debtor's principals and paid to FCNB. To the extent any claim remains, it will be held in abeyance until the final outcome of the State Court Litigation. | Impaired |

| Class | Class Composition | No. of Claimants (Approx.) | Amount of Claims (Approx.) | Amount and Timing of Distributions | Impaired or Unimpaired |
|---|---|---|---|---|---|
| 5 | General Unsecured Claims | | $ | Allowed Claims will receive general limited liability company membership interests in the Reorganized Debtor consistent with the proportion of their interests in the Property prior to the Effective Date. | Impaired |
| 6 | Interests | 2 | N/A | The Holder of Interests shall receive general limited liability company membership interests in the Reorganized Debtor in exchange for new value | Impaired |

The Plan provides for payment to the holders of Claims for Classes 1 through 5 in an amount greater than the amount such claimants would receive in a liquidation of the Debtor's assets under chapter 7 of the Bankruptcy Code.  The Debtor believes that the holders Class 2, 3, 4,  and 5 Claims would receive no dividend in a chapter 7 liquidation.

A copy of the Plan is attached to this Disclosure Statement as Exhibit A

## I.    __INTRODUCTION__

On February 11, 2013, (the "Petition Date"), Arrow Aluminum Industries, Inc. (the "Debtor" or "Arrow") filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"), with the United States Bankruptcy Court for the Western  District of Tennessee, Western Division (the "Bankruptcy Court").  As required by § 1125 of the Code, the Debtor submits this Disclosure Statement for the Bankruptcy Court's approval, along with the Plan dated June 11, 2013.  The Plan is hereby submitted to the Court for approval and distribution to holders of claims or interests with respect to the Debtor and its assets.

A copy of the Plan accompanies this Disclosure Statement as Exhibit A.  The purpose of the Disclosure Statement is to provide holders of claims and interest with adequate information about the Debtor and the Plan to enable them to make an informed judgment about acceptance or rejection of the Plan.  Pursuant to the provisions of the Bankruptcy Code and in conjunction with the confirmation process for the proposed Plan, the Debtor has prepared and filed this Disclosure Statement (the "Disclosure Statement") designed to contain:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan....

11 U.S.C. § 1125(a)(1).  The provisions of this Disclosure Statement include a summary of the events which caused the filing of the Chapter 11 petition, a summary of the significant events that have taken place during the Chapter 11 Case, an analysis of the terms of the Plan and the means for implementing the Plan.  Unless otherwise defined herein, all of the capitalized terms used in the Disclosure Statement are defined in the Plan, and the definitions contained therein are

1

applicable in this Disclosure Statement.

This Disclosure Statement should be read in its entirety prior to voting on the Plan.  No solicitation of votes will be made except pursuant to this Disclosure Statement.  Therefore, for purposes of voting on the Plan, parties in interest should not rely on any information relating to the Debtor other than the information contained in this Disclosure Statement.  You are urged to study the Plan in full and to consult with your own legal and financial advisors about the Plan and its impact, including, but not limited to, possible tax consequences, upon your legal rights. Please read the Disclosure Statement carefully before voting on the Plan.

The Plan, a copy of which is attached hereto as <u>Exhibit A</u>, is incorporated in and made a part of this Disclosure Statement.  This overview and any summary contained herein are qualified in their entirety by the more detailed information contained in this Disclosure Statement and in the Plan.

The Debtor is furnishing this Disclosure Statement and ballots to holders of claims in impaired classes, pursuant to the requirements of § 1125 of the Bankruptcy Code and Rule 3017 of the Federal Rules of Bankruptcy Procedure ("<u>FRBP</u>" or "Bankruptcy Rules").  Under § 1122 of the Bankruptcy Code, substantially similar claims are placed in classes.  Under § 101(5) of the Bankruptcy Code, a "claim" means a right to payment or a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment.  Generally, in the context of voting for confirmation of a plan of reorganization, a claim or interest is deemed impaired unless one of three conditions is met, namely, (i) the legal, equitable, and contractual rights of the holder are left unaltered by the Plan; (ii) the Plan provides for curing defaults occurring before or after commencement of the case; or, (iii) the holder receives cash for the allowed amount of its claim or for the fixed redemption price or liquidated value of its interest. Unimpaired claims are more specifically defined in § 1124 of the Bankruptcy Code.  This

Disclosure Statement and the Plan identifies the classes and whether these classes are deemed impaired or unimpaired under the Plan.

A holder of a claim or interest in an impaired class is entitled to vote to accept or reject the Plan if such claim or interest has been allowed pursuant to § 502 of the Bankruptcy Code or temporarily allowed for voting pursuant to FRBP 3018.

**YOUR VOTE IS IMPORTANT.** Confirmation of the Plan and implementation of the proposed provisions and transactions under the Plan depends upon receipt of a sufficient number of votes in favor of the Plan. If the Debtor has received a sufficient number of votes in favor of the Plan upon expiration of the solicitation period, the Debtor intends to seek confirmation of the Plan.

**The Plan sets forth the proposed treatment of each class of Claims and Interests. This Introduction and any summary contained herein is intended as an aid in understanding the Plan and should not be used as a substitute for careful review of this Disclosure Statement and the Plan. Again, you are urged to study this Disclosure Statement and the Plan in full and to consult with your own legal and financial advisors about the Plan and its impact, including but not limited to possible tax consequences, upon your legal rights.**

**No representations concerning the Debtor, particularly as to Debtor's financial condition, or the value of their property, are authorized by Debtor except as set forth in this Disclosure Statement. Although great effort has been made by Debtor to be accurate, the information contained herein or appended hereto as exhibits, has not been subject to a certified audit. Therefore, the Debtor is unable to warrant or represent that the information contained herein is without any inaccuracy.**

**Furthermore, while any dividend or distribution offered to any person or entity**

3

**pursuant to the Plan may not meet the reader's understanding of the definition of "securities," such dividend may be deemed a "security" pursuant to federal or state securities laws. Accordingly, the Plan should be evaluated in much the same manner as the purchase of a security would be evaluated. The advice and assistance of competent professionals should be sought.**

The Court has set _____ __, 2013, at __:__ _.m., in Courtroom 630, in the United States Bankruptcy Court for the Western District of Tennessee, Western Division, at 200 Jefferson Avenue, 6th Floor, Memphis, Tennessee, for a hearing on confirmation of the Plan.

**THE HOLDERS OF CLAIMS MAY VOTE TO ACCEPT OR REJECT THE PLAN BY COMPLETING THE ACCOMPANYING BALLOT. TO BE COUNTED, YOUR BALLOT MUST BE PROPERLY COMPLETED, EXECUTED AND FILED OR RECEIVED BY THE CLERK FOR THE BANKRUPTCY COURT BY 4:00 P.M. ON _____ __, 2013, AT THE FOLLOWING ADDRESS:**

Chandra Madison
40 South Main Street, Suite 2700
Memphis, Tennessee 38103

**YOU ARE URGED TO RETURN YOUR BALLOTS SOONER, IF POSSIBLE. UNLESS YOUR BALLOT IS PROPERLY COMPLETED AND RECEIVED BY THE BANKRUPTCY CLERK BY SUCH DATE AND TIME, YOUR VOTE WILL NOT BE COUNTED.**

Pursuant to the Bankruptcy Code, the Court may not confirm the Plan pursuant to 11 U.S.C. § 1129(a) unless it receives the acceptance of more than one-half of the voting claimants in each impaired class who hold at least two-thirds in dollar amount of the claims voting in that class. If one or more classes fail to accept the Plan, the Debtor nonetheless intends to ask the Court to confirm the Plan by invoking the provisions of 11 U.S.C. § 1129(b), which provide that the court may confirm a plan even though one or more of the classes of claims or interests fail to vote to accept the plan, so long as the plan meets certain requirements.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

(1)     Who can vote or object to the Plan;

(2)     The treatment of your claim (*i.e.,* what your claim will receive if the Court confirms the Plan) and how this treatment compares to the alternatives;

(3)     The history of the Debtor and significant events during the bankruptcy;

(4)     What the Court will consider in deciding whether to confirm the Plan;

(5)     The impact of confirmation; and

(6)     Whether the Plan is feasible.

This Disclosure Statement cannot tell you everything about your rights.  You should consult your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

## II.     EVENTS LEADING UP TO THE CHAPTER 11 FILING

Arrow Aluminum has been in Martin, Tennessee for 33 years in the 70,000 sq. ft. building at 113 Neal Street.  At its peak, twenty people were employed in the manufacturing of vinyl and aluminum windows and doors. Today, the Debtor employs seven people, including the owners.  Only about 5 % of the current product is Aluminum.  Arrow makes premium products that are very competitive both in quality and price.  Arrow strives to deliver complete orders to its customers in one week. This is Arrow's third Chapter 11 since 2011. The first filing, Case No. 11-21215-DSK, was dismissed after Arrow was unable to obtain the necessary votes for confirmation. The second filing, Case No. 12-13482, filed on December 13, 2012, was dismissed for failure to complete the filing requirements.

### A.     ENERGY STAR

ENERGY STAR is the government-backed symbol for energy efficiency.  It was established to reduce greenhouse gas emissions and other pollutants resulting from the inefficient

use of energy. It also serves as a guide to consumers to identify and purchase energy efficient products, including windows. The performance of all ENERGY STAR qualified windows is tested and certified independently according to procedures established by the National Fenestration Rating Council (NFRC). The NFRC is an independent no-profit entity that sponsors certified rating and labeling to assist consumers in comparing the energy performance of windows. In January 2009, Arrow became an "Energy Star Partner" and met the requirements of the Program with a U-value of <0.40.  In June of 2009, the federal government issued a tax credit to home owners who purchased windows that met a U-value of 0.30.  The credit was for thirty percent (30%) of the cost of windows up to $1,500.00 maximum.  Arrow's sales were impacted severely because homeowners wanted a window that would qualify for the tax credit.  Arrow's windows met energy codes in 2009 but did not meet the requirements of the tax credit.

Once the word got out that Arrow's windows would not qualify for the tax credit, customers started buying windows from suppliers who did meet the U-value of 0.30 or less requirement.  The process requires Argon injected between the glass to get that kind of U-value (the lower the better).  Arrow's insulated glass design would not retain the Argon the way it was designed and the fabrication method had to be changed.

One January 1, 2010, ENERGY STAR required a U-value <0.35. Arrow's products were no longer compliant and potential large buyers like 84 Lumber and Lowes required compliance with Energy Star Program to be a supplier.  Arrow did not comply and was dropped from their list of vendors.

**B.    Economic Downturn and Receivership Proceeding**

After the 2008 economic downturn, in a story that is now all too familiar, the volume and quality of Arrow's business declined precipitously.  It continued to decline until 2012.  Signs of recovery have emerged in 2013.

Eventually, FCNB notified the Debtor that certain amounts due under the Secured Debt were past due and unpaid.  FCNB sent the Debtor that because of the failure to cure the default under the Secured Debt, FCNB would b exercising its right to accelerate the outstanding principal indebtedness and the right to foreclose on Arrow's assets.   It then instituted an action in Chancery Court of Weakley County, Tennessee. The Debtor's principal place of business was owned by the founder of Arrow, Mr. and Mrs.  Bill Blackwell. The business premises was foreclosed upon on or about January 4, 2013.  The commencement of this case stopped all other actions.

### C.      State Court Lawsuit

In order to address the changing market conditions as well as problems created by the ENERGY STAR classifications, Arrow obtained a $500,000 working capital loan from FCNB. The loan, obtained in April 2010, was guaranteed by the Small Business Administration. The purpose of the loan was to fund Arrow's working capital and to upgrade Arrow's Energy Star Certification. Notwithstanding the purpose of the loan, FCNB required Debtor to use $278,000 of the proceeds to pay other FCNB obligations. The end result was Debtor was unable to purchase the needed equipment. Arrow commenced a suit in the Weakley County Circuit Court. The case, *Ted Blackwell and Arrow Aluminum, Inc. v. First Citizens National Bank*, Case No: 1011-CV-30 ("State Court Litigation") is pending. On April 30, 2013, the parties went to mediation but were unable to resolve their differences. FCNB denies any liability and the case is set for a jury trial, although no trial date has been set.

### III.    SUMMARY OF SIGNIFICANT EVENTS DURING THE BANKRUPTCY

### A.      Bankruptcy Proceedings

Since the filing of the Chapter 11 Case, the Debtor opened a debtor-in-possession account to handle any estate financial business, and filed all required schedules of assets, liabilities and financial transactions.   The Debtor also employed Steven N. Douglass and Harris Shelton

7

Hanover Walsh, PLLC as counsel.

    1.      The Motion to Transfer Venue

On February 15, 2013, FCNB filed the Motion to Transfer Venue [Docket 6].  On March 4, 2013, the Bankruptcy Court entered an Order on Motion to Transfer Venue [Docket14] conditionally denying the relief sought.

    2.      FCNB's Motion to Lift Stay

On March 13, 2012, FCNB filed a Motion to Lift Stay [Docket 16] (the " FCNB Motion").  The FCNB sought to lift the stay in order to continue its state court collection efforts against the Debtor and insiders.

On April 3, 2013, the Debtor filed an Objection to the FCNB Motion [Docket 25] (the "Response").  The Debtor's response focused on the significant impact the FCNB Motion would have on the Debtor's estate and ability to reorganize and restructure the Property.  The Motion is still pending

    3.      IRS's Motion for  Relief from the Automatic Stay

On April 26, 2013, the IRS filed its Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. 362(d) (the "Stay Motion") [Docket  29]. The Debtor has filed an objection [Docket 35] and will oppose the Stay Motion.

**B.**    **Current Financial Condition**

The Debtor has been operating from orders placed and the collection of accounts receivable. A copy of all of the Debtor's Monthly Operating Reports from the Petition Date to the date of approval of this Disclosure Statement is attached as Exhibit B.

Under the Plan, the Reorganized Debtor will continue to operate by obtaining sufficient down payments or deposits on its orders. The down payment / deposit will be used to purchase raw materials to fill the order. The Reorganized Debtor will continue the Debtor's efforts to

obtain financing to purchase needed equipment. The Reorganized Debtor's success will be dependent upon the continued economic turnaround and the opportunities present by construction projects in the northeast area of the United States where its vinyl window is in high demand.

### C.    Assets and Secured Liabilities

The Debtor's primary asset is its design of its windows and the equipment needed to manufacture them.

The Debtor has secured liability in the amount of $7.5 million to FCNB and $285,329 to the IRS.

## IV.    THE PLAN OF REORGANIZATION

**The following summary of the principal provisions of the Plan is qualified in its entirety by reference to the provisions of the Plan, a copy of which is annexed to this Disclosure Statement as "Exhibit A" and which is incorporated herein by reference. This summary should not be used as a substitute for actually studying the Plan itself.**

### A.    General Background

A "creditor" is defined in the Bankruptcy Code, as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor". The term "claim" is defined in the Bankruptcy Code as a "right to payment . . . [or a] right to an equitable remedy for breach of performance if such breach gives rise to a right to payment . . . ." The term "interest" is not defined in the Bankruptcy Code but is used to describe proprietary rights, which in corporate cases such as these means the common stock of the Debtor.

On February 11, 2013, the Debtor filed schedules of its creditors as of the Petition Date. Thereafter, certain of the schedules were amended. Some of the creditors identified on Debtor's schedules have been listed as holding contingent, unliquidated, disputed, or undetermined

claims.  Any references in this Disclosure Statement or the accompanying Plan to any such contingent, unliquidated, disputed, or undetermined claim or a creditor holding such a claim shall not be construed or deemed as an admission of the validity, enforceability, or amount of any such claims.

Generally, a chapter 11 plan (i) divides claims and interests into classes, (ii) specifies the property or treatment each class will receive under the plan, and (iii) otherwise provides for the adjustment of liabilities of the debtor.

Under a chapter 11 plan, "claims" and "interests" are classified rather than classifying "creditors" and "equity security holders" because a creditor or equity security holder may have various claims or interests which fall into more than one classification.  For example, a secured creditor may be undersecured, and under §506(a) of the Bankruptcy Code that creditor's claim would be treated as secured to the extent of the value of the security and unsecured as to the remainder of the claim.  Each creditor or equity security holder then votes his or her claim or interest to accept or reject the plan of reorganization.

## B.    Unclassified Claims

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims have not been classified.  Holders of Administrative Expense Claims do not have a right to vote to accept or reject the Plan.  However, Administrative Expense Claims are identified in this Disclosure Statement and the accompanying Plan, and their treatment is described, to promote "enabl[ing] a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan[.]"

### 1.    Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed pursuant to 11 U.S.C. § 507(a)(1).  The Code requires that all

administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

No claimant has agreed otherwise, except as specified herein.  As of this date, the Debtor's estate is not subject to any unpaid administrative liabilities, other than: (1) quarterly fees for the Office of the United States Trustee for the current quarter and which have not come due yet (and shall be paid when due); and (2) any allowed, unpaid claims of the bankruptcy counsel for the Debtor.  After the entry of the Confirmation Order, Harris Shelton will apply to the Court for final approval of its fees pursuant to 11 U.S.C. § 330.  To the extent that any compensation is awarded in excess of the prepetition retainer, Harris Shelton will accept payment as cash is available after the satisfaction of any and all other Plan obligations then immediately due.  Payment in full should occur within three (3) months after the Effective Date.

### C.    Classification of Claims and Interests

The Plan proposes six (6) classes of Claims and Interests for purposes of voting on the Plan and making distributions thereunder, namely:

| | |
|---|---|
| Class 1: | First Citizens National Bank - Secured claim and impaired. |
| Class 2: | Internal Revenue Service - Priority and unsecured. |
| Class 3: | IRS and State of Tennessee  - Undersecured claim and impaired. |
| Class 4: | First Citizens National Bank - Undersecured claim and impaired. |
| Class 5: | General unsecured creditors. |
| Class 6: | Equity interest holders in the stock of the Debtor. |

### D.    Treatment of Classified Claims and Interests

| | |
|---|---|
| Class 1: | The secured claim of First Citizens National Bank shall be in the amount of $200,000.00  It will be amortized over fifteen (15) years and accrue interest at the rate of five percent (5%) per annum. |
| Class 2: | The Internal Revenue Service shall be paid its allowed, priority unsecured claim in full over sixty (60) months from confirmation. |

11

Class 3:      The secured claim of Internal Revenue Service will be treated as fully undersecured in Class 2 and 5. The Internal Revenue Service lien shall be dissolved.

Class 4:      First Citizens National Bank will retain an unsecured claim for the undersecured portion of its debt after receipt of funds from the reverse mortgage obtained by the principals. To the extent any claim remains, it will be held in abeyance until the final outcome of the State Court Litigation.

Class 5:      The undersecured (except First Citizens National Bank) and unsecured claim portion of secured creditors and general unsecured creditors receive preferred stock in proportions. The allowed preferred stock shall be entitled to five percent (5%) of each creditor's allowed claim, pro-rata, without interest, late charges, penalties or attorney fees.

Class 6:      The equity holders shall retain their interests.

## V.    MEANS FOR IMPLEMENTING THE PLAN OF REORGANIZATION

### A.    Funding for the Plan; Structure of Reorganized Debtor

The monthly payments due on account of the allowed Claims will be made from the net operational profits (positive cash flow) of the operations, after allowance for operational expenses (vendor costs, taxes) and reserves (to cover extraordinary repairs). The Reorganized Debtor will remain in the current premises for 180 days after the Effective Date. Attached as Exhibit C is the projected cash flow and anticipated income and expenses, including plan payments, over the life of the Plan.

### B.    Post-confirmation Management; Disbursing Agent

Pursuant to 11 U.S.C. § 1123(b)(3), the Reorganized Debtor will be managed by the current management: Bill Blackwell (CEO); Ted Blackwell (President); and R. D. Blackwell (Treasurer) (the "Managers"). The Managers shall have the right to assert for the estate any and all causes of action, post-confirmation, in accord with applicable law. All such causes of action and related legal, equitable and contractual rights and benefits, which are property of the Debtor's

bankruptcy estate, including without limitation Avoidance Actions created pursuant to bankruptcy law, are vested in the Reorganized Debtor upon confirmation, and may be prosecuted and/or settled at the Managers' direction. The Managers will serve as the disbursing agent for the purpose of making all distributions provided for under the Plan. The Managers shall serve without bond, and shall not receive any compensation for management and/or disbursement services rendered and expenses incurred pursuant to the Plan. The various duties of the Managers may be delegated by the Reorganized Debtor upon the Effective Date But it is anticipated that Ted Blackwell will manage the daily business affairs of the Reorganized Debtor.

### C.   Risk Factors

1.   <u>Risk Factors</u>

If the economy continues to improve as projected, the Reorganized Debtor would be hampered in its ability to make the monthly payments called for under the Plan on account of the Class 1 Claim, and to raise additional funds, through sale and/or refinancing, to pay off any remaining Plan obligations (primarily Class 1 and Class 6 Claims, as allowed).  While the Debtor believes that the projections of future positive cash flow are valid any projection of economic activity and value is, to some extent, speculative, and should be considered as an educated projection and not a guaranty.

### D.   Executory Contracts and Unexpired Leases

All unexpired leases and executory contracts not explicitly mentioned below are rejected.

**All parties to a Rejected Contract, shall file a proof of claim within thirty (30) days of the Effective Date (each a "Rejection Claim").  If a Rejection Claim is filed, the Reorganized Debtor shall file any objection to such Rejection Claim within sixty (60) days of the Effective Date or the Rejection Claim shall become an Allowed Claim and included as a Class 3 Claim.**

### E.    Additional Plan Provisions

1.    <u>Retention of Jurisdiction</u>

Until the Chapter 11 Case is closed, the Court retains jurisdiction to ensure that the purpose and intent of this Plan are carried out, to hear and determine all Claims against the Debtor, and to enforce all causes of action which may exist on behalf of the Debtor or the Reorganized Debtor, over which the Court had or would have had jurisdiction prior to confirmation of the Plan.  In addition, the Court retains jurisdiction to amend or modify the Plan to the extent and under the circumstances that the Court deems appropriate, as permitted by the Court and the Federal Rules of Bankruptcy Procedure.

Notwithstanding confirmation of the Plan or the occurrence of the Effective Date, the Court also retains jurisdiction for the following purposes:

a.    To hear and determine any dispute arising under the Plan or any disputes with respect to distributions made pursuant to the Plan;

b.    To adjudicate any adversary proceedings or contested matters that may be commenced or maintained by the Debtor or the Reorganized Debtor pursuant to the Case or the Plan, including, without limitation, any adversary proceeding or contested matter with respect to an Avoidance Action, proceedings to adjudicate the allowance of Disputed Claims, and all controversies and issues arising from or related to any of the foregoing;

c.    To make such orders as are necessary or appropriate to carry out the provisions of the Plan;

d.    To make such other orders or give such direction as may be appropriate under Section 1142 of the Code;

e.    To adjudicate all Claim objections or estimations filed by the Debtor or the Reorganized Debtor, and to determine the Allowed amount of any Claims;

f.    To consider and order any amendments to the Plan as may be requested pursuant to the appropriate section of the Plan;

g.    To hear and determine all Rejection Claims arising from the rejection of Rejected Contracts;

14

h.    To hear and determine all applications or requests for payment of Administrative Claims, including fee applications or fee disputes involving the fee applications of professionals employed during the Chapter 11 Case for services rendered prior to confirmation of the Plan;

i.    To enforce all orders previously entered by the Court;

j.    To implement the provisions of the Plan and enter orders in aid of confirmation and consummation of the Plan, including such orders as may be requested by the Debtor or the Trust under the Plan; and

k.    To enter a final decree closing the Chapter 11 Case.

Nothing contained herein shall limit the Court's power to abstain or decline to exercise jurisdiction over any matter described above, and if the Court exercises such power, any such matter may be heard before any State or Federal Court which may otherwise have competent jurisdiction over such matter.

2.    Retention and Assignment of Claims

Except as expressly provided to the contrary in this Plan, or any other contract, instrument, release, indenture or other agreement entered into in connection with this Plan, in accordance with Section 1123(b) of the Bankruptcy Code, all Claims and causes of action of the Debtor, including, but not limited to, Avoidance Actions, together with the proceeds thereof, are reserved for, assigned to, and shall be and remain property of the Reorganized Debtor.

F.    **Injunctions**

As of the Effective Date, until the Plan is fully performed and all assets have been distributed, abandoned or otherwise disposed of, all entities shall be enjoined from: (a) prosecuting any claim, demand, debt, right, cause of action, liability or interest against or with respect to the Debtor, the Reorganized Debtor or the Property which has been released, waived or terminated pursuant to this Plan; (b) enforcing, attaching, collecting or recovering in any manner, any judgment, award, decree or order against the Debtor, the Reorganized Debtor or the Property; (c) creating, perfecting or enforcing any Lien or encumbrance against the Debtor or the

Property; (d) commencing or continuing any action, in any manner or in any place, that does not comply with, or is inconsistent with, the provisions of the Plan, including the Foreclosure Proceeding; and (e) commencing or continuing, in any manner, any action or other proceeding against the Debtor, Reorganized Debtor or the Property.

### G.      Changes in Rates Subject to Regulatory Commission Approval

The Debtor is not subject to governmental regulatory commission approval of any rates charged.

### H.      Tax Consequences of Plan

The Debtor has not sought or obtained rulings from the Internal Revenue Service or any state or local taxing authority with respect to the tax consequences, if any, of the Plan and the transactions contemplated thereby.   Debtor is a limited liability company and is taxed as a partnership and, therefore, does not incur any income tax liability that can adversely affect the amount of dividends to be paid under the Plan.   The Plan may, however, affect the tax treatment of various claimants.

**CREDITORS AND HOLDERS OF INTERESTS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS ABOUT THE CONSEQUENCES TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS OF THE CONSUMMATION OF THE PLAN.**

## VI.    <u>VOTING PROCEDURE</u>

### A.      Voting Procedure and Ballots

All votes to accept or reject the Plan must be cast using the accompanying Ballot attached as <u>Exhibit D</u> (the "<u>Ballot</u>").   The Ballot must:   (a) be properly completed in accordance with the instructions thereon; (b) indicate the Claim Class under which the Ballot is being cast and whether the vote is cast to accept or reject the Plan; (c) be signed by the Creditor or the Creditor's authorized agent; and (d) be filed electronically or received by the Bankruptcy Clerk on or before the Voting

Deadline at the address set forth below.  Any Creditor holding a Claim in more than one Class that is

entitled to vote on the Plan must cast a separate Ballot within each Class.  If a Ballot is signed by a

trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation or other person

acting in a fiduciary or representative capacity, such person should indicate such capacity when

signing, and should attach proper evidence of his or her authority to so act.

**ANY BALLOT NOT PROPERLY COMPLETED OR THAT IS NOT RECEIVED
BEFORE THE VOTING DEADLINE WILL NOT BE COUNTED.**

**B.      Voting Deadline**

**The Court has fixed _:__ _.m. (C.S.T.) on _____, 2013** (the "Voting

Deadline") as the date and time by which Ballots to accept or reject the Plan be filed electronically or

received by the Bankruptcy Clerk at the following address:

Chandra Madison, Esq.
40 South Main Street, Suite 2700
Memphis, Tennessee 38103

**UNLESS YOUR BALLOT IS PROPERLY COMPLETED AND RECEIVED BY THE**

**BANKRUPTCY CLERK BY THE VOTING DEADLINE ABOVE, YOUR VOTE WILL**

**NOT BE COUNTED.**

**C.      Withdrawal of Ballots or Changing Votes**

Pursuant to Federal Rule of Bankruptcy Procedure 3018(a), the Bankruptcy Court, after

notice and a hearing, may permit a creditor or equity security holder to change or withdraw an

acceptance or rejection for cause.

**VII.    <u>ACCEPTANCE AND CONFIRMATION OF PLAN</u>**

As a condition to confirmation, the Bankruptcy Code requires that each impaired class of

claims or interests accept the Plan, with the exceptions described below.  The Bankruptcy Code

defines acceptance of the plan by a class of claims as acceptance by holders of at least two-thirds in

dollar amount and more than one-half in number of claims of that class.  However, for purposes of this

17

calculation, only claimants who actually vote to accept or reject the plan are counted.  Holders of claims who fail to vote are not counted as either accepting or rejecting the Plan.

Classes of claims or interests that are not "impaired" under the Plan are deemed by the Bankruptcy Code to have accepted the Plan, and those classes are not entitled to cast Ballots.  A class is "impaired" if the legal, equitable or contractual rights attaching to the claims or interests of that class are modified, other than by curing defaults and reinstating maturities, or by payment in full in cash.  In this Chapter 11 Case, all classes are impaired and are entitled to vote.

In determining whether the Plan has been accepted by the requisite number of Creditors, votes will be counted only with respect to Claims: (a) with respect to which the holder of a Claim has filed a proof of claim pursuant to 11 U.S.C. § 501 prior to the applicable time fixed by the Court; or (b) that are "deemed allowed" because the claims are listed in the Debtor's bankruptcy schedules and are not listed as contingent, unliquidated or disputed; and (c) which have not been disallowed, or disallowed for voting purposes, by the Court prior to the confirmation hearing.  **THE BALLOT FORM PROVIDED WITH THIS DISCLOSURE STATEMENT IS NOT A PROOF OF CLAIM.**

This Plan may be confirmed even if it is not accepted by all impaired classes, as long as at least one impaired class of claims has voted to accept it.  The Debtor will seek confirmation of the Plan pursuant to 11 U.S.C. § 1129(b) if the Plan is rejected by any impaired Class of Creditors.  The process by which non-accepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown."  The Bankruptcy Code allows the "cramdown" of the Plan on non-accepting Classes of Claims or Interests: (1) if the Plan meets all consensual requirements except the voting requirements of 11 U.S.C. § 1129(a)(8); and (2) if the Plan (a) does not "discriminate unfairly" and (b) is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

The Debtor will ask the Court to confirm this Plan by cramdown on impaired classes 1, 2,

3, 4 and 5 if any of these classes do not vote to accept the Plan.  The Debtor expects that cramdown will be required with regard to Class 1 and Class 4, but not with regard to any other Class of Creditors or equity Interest holders.

The Court will set a hearing to determine whether the Plan has been accepted by the requisite number of holders of Claims and whether the other requirements for confirmation of the Plan have been satisfied.  Each holder of a Claim or Interest will receive, either with this Disclosure Statement or separately, the Court's notice of hearing on confirmation of the Plan.

## VIII.  **LIQUIDATION ANALYSIS**

Another confirmation requirement is the "Best Interests Test," which requires a liquidation analysis.  Under the Best Interests Test, if a claimant or interest holder of an impaired class does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, a debtor's assets are usually sold by an appointed Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien.  Administrative claims are paid next.  Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation.  The Debtor maintains that this requirement is met.

The Class 1 Claim, projected to be paid in full, will retain its lien on the Property, which is equivalent in value (by definition) to the claim balance. If the Property is liquidated, then the Debtor will not have any funds with which to make any payments to any other Classes. Class 1 would receive the value of the Property, in this case valued at $200,000. None of the other classes would receive any payment. Any nominal cash assets would be absorbed through payment of allowed administrative and priority claims. The Plan thus satisfies the "best interests" test for all Creditors, including FCNB. Creditors will receive significantly greater value than they would under a Chapter 7 case.

## IX.   <u>FEASIBILITY</u>

For the Court to confirm the Plan, it must also be feasible. Feasibility means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or the Reorganized Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough Cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date. The Debtor maintains that this aspect of feasibility is satisfied. First, the Debtor will only be subject to the quarterly fees owed to the Office of the United States Trustee, and to the allowed fees and expenses of Harris Shelton. All additional amounts needed to satisfy any other Claims will come from the operations of the business. As such, the Debtor will have enough Cash to pay its Effective Date obligations.

Second, a feasibility analysis considers whether the Debtor will have enough Cash over the life of the Plan to make the required payments. The data stated in <u>Exhibit C</u> shows that (1) the business will generate net revenues sufficient to make the monthly Plan payments due on

account of all Claims; and (2) the State Court Litigation will yield enough funds to fully satisfy the Plan payments to all classes as provided herein.

## X.   EFFECT OF PLAN CONFIRMATION

### A.   Discharge

Under the Plan, the Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the greatest extent possible as specified in 11 U.S.C. § 1141, unless such liabilities are specified for treatment under the Plan, and then only to the extent of the treatment hereunder.   Discharge will be entered with regard to each claim upon the substantial consummation of the Plan.

### B.   Modification of the Plan

The Debtor may modify the Plan at any time prior to confirmation.   The Debtor may modify the Plan at any time after confirmation and before substantial consummation, but only if circumstances warrant and after notice and a hearing.   Once the Plan has been substantially consummated and the estate fully administered, as referred to in FRBP 3022, the Debtor may move the Court for entry of a final decree, the effect of which would be to close this bankruptcy case.   After such closure, a party seeking any type of relief relating to a Plan provision may seek such relief in any court of competent jurisdiction.

### C.   Quarterly Fees

Quarterly fees accruing pursuant to 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid to the UST on or before the Effective Date.   Quarterly fees accruing pursuant to 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the UST in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an order of dismissal or conversion to chapter 7.

## XI.      RECOMMENDATIONS AND CONCLUSION

This Disclosure Statement, which must be read in conjunction with the Plan, contains a detailed summary of the history of the Debtor, the principal causes of the financial difficulties for the Property, a summary of the Plan, and a discussion of the process for confirming this Plan. Creditors and parties in interest are cautioned, however, that reference should be made to the Plan itself for a proper understanding and analysis of its terms and provisions. **ALL HOLDERS OF CLAIMS ARE URGED TO READ THE PLAN CAREFULLY.** The Debtor believes that the Plan is fair, equitable and reasonable. Accordingly, the Debtor urges holders of impaired claims to vote to accept the Plan by returning their properly completed ballots to the Bankruptcy Clerk by _:_ _.m., on _____, ____.

Respectfully submitted,
Arrow Aluminum Industries, Inc.

/s/Steven N. Douglass
HARRIS SHELTON HANOVER WALSH, PLLC
Steven N. Douglass (009770)
Chandra Madison (30536)
40 South Main Street, Suite 2700
Memphis, Tennessee 38103
(901) 525-1455
(901) 526-4084 - Fax